# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Laura Randolph-Kennedy,**
**Petitioner Below, Petitioner**

**FILED**

May 1, 2015

**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

**vs)   No. 14-0682** (Kanawha County 13-AA-6)

**Verizon Services Corp.,**
**Respondent Below, Respondent**


## MEMORANDUM DECISION

Petitioner Laura Randolph-Kennedy, appearing *pro se*, appeals the order of the Circuit Court of Kanawha County, entered April 3, 2014, that affirmed an order of the Board of Review of Workforce West Virginia, entered December 6, 2012, disqualifying petitioner from receiving unemployment benefits. Respondent Verizon Services Corp., by counsel Mark H. Dellinger, filed a response.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner worked for respondent from July 12, 2007, to July 14, 2012, first as a sales representative and then as a customer service clerk in Clarksburg, West Virginia. According to the testimony of respondent's senior labor relations consultant, Thomas Stribling, all non-management employees at respondent's Clarksburg office were represented by the Communications Workers of America ("union"). Previously, respondent and the union negotiated a collective bargaining agreement ("CBA") that was extended in 2011 to apply to the period of petitioner's separation from employment.

The CBA contained two provisions that pertain to the instant case: Article 35 and Article 36A. At an October 2, 2012 administrative hearing,[1] Mr. Stribling testified that Article 35 allowed respondent to implement layoffs to reduce its workforce under certain terms and conditions, including advance notice to the union that layoffs would need to be implemented if too few

---

[1] The administrative hearing was scheduled because respondent appealed the initial decision of the deputy commissioner, dated August 2, 2012, that petitioner was not disqualified from receiving unemployment benefits.

1

employees voluntarily agreed to terminate employment in exchange for the receipt of an enhanced income security plan ("EISP").[2] In contrast, Mr. Stribling testified that Article 36A permitted respondent to offer employees an unlimited number of EISP's in an effort to achieve wholly voluntary reductions in its workforce.

Mr. Stribling explained that in connection with an EISP respondent offered in June of 2012, that respondent determined that it had a surplus of workers; that eight employees, including petitioner, accepted that EISP; and that respondent offered the June of 2012 EISP pursuant to Article 36A of the CBA—not Article 35. Mr. Stribling further testified as follows:

Q.    And of the 20 individuals out of the 28 who did not accept the EISP offer, are they still employed with [respondent]?

A.    Yes.

Q.    Still doing their same job with the same pay?

A.    Yes.

Q.    And so it'd be fair to say in connection with this EISP offer that was made in June of 2012 that [respondent] received fewer volunteers than it had identified as surplus; correct?

A.    Yes.

Q.    And even though that occurred, no one was laid off?

A.    Correct.

Mr. Stribling testified that the newspaper articles regarding the possibility that respondent might lay off employees did not relate to the corporate division in which petitioner was working—Verizon of West Virginia. According to Mr. Stribling, respondent has not laid off any

[2] Pursuant to Article 36A of the CBA, along with its attached Exhibit VII, an "enhanced income security plan" is an offer respondent makes to individual employees by which it provides the employee certain incentives in exchange for the employee agreeing to voluntarily terminate employment. Sections 1, 2, and 3 of Article 36A and Exhibit VII describe these incentives as (1) a termination allowance of $1,100 for every "completed year" up to, and including, thirty years of service for a total of $33,000; (2) a termination bonus of $10,000; and (3) an allowance for expenses "incurred for relocation costs, tuition or training costs, or job placement expenses relating to seeking other employment, or any combination thereof[.]" CBA, Article 36A, § 3. As discussed *infra*, the EISP petitioner accepted in June of 2012 had these components except that the termination allowance was doubled to $2,200 for every "completed year," so it was more lucrative than required by the CBA.

employee as part of its West Virginia operations since Mr. Stribling was first hired by respondent in 1996. Mr. Stribling further explained that even if respondent had invoked the CBA's Article 35, employees whose hiring dates were prior to August 3, 2003, were protected from being laid off pursuant to the Bell Atlantic-GTE merger agreement.

On cross examination, petitioner asked Mr. Stribling whether employees accepting an EISP were eligible for unemployment compensation. Mr. Stribling answered that whether an employee received benefits was determined by each state's law and that respondent believed it had grounds to oppose petitioner's application for compensation, "or we would[n't] be sitting here." On re-cross examination, petitioner attempted to ask Mr. Stribling whether respondent objected to receipt of unemployment benefits by a group of former employees who accepted an EISP in April of 2012. However, the ALJ sustained respondent's objection as to relevancy, ruling that the prior case had "nothing to do with this hearing."

Respondent also presented the testimony of Tammy Mason, its sales supervisor at the Clarksburg office, who confirmed that the employees who declined to accept the June of 2012 EISP are still (1) working at the Clarksburg office; (2) doing the same job; and (3) earning the same wages. On cross examination, petitioner questioned Ms. Mason as to whether she attempted to persuade employees to agree to the June of 2012 EISP. Ms. Mason testified that all she did was read a briefing document to employees verbatim, which included using the phase "force surpluses." Respondent introduced the briefing document into evidence, and it also utilized the words "voluntary," "volunteer," and "volunteering" a total of eight times.

During petitioner's testimony, petitioner indicated that she had a good familiarity with the CBA by explaining that not only had she filed many grievances, but also "won them." Petitioner further testified that as part of the EISP packet she received, there was a question-and-answer page that stated, in pertinent part, that if an employee terminated employment in exchange for a EISP, "your eligibility for [unemployment] benefits are determined by state laws and state agencies" and that "[y]ou should talk to your local unemployment office[.]" Petitioner indicated that she interpreted that answer to mean that respondent would not oppose petitioner obtaining unemployment benefits if she quit her job because of the EISP.

It is undisputed that by agreeing to the June of 2012 EISP, petitioner received (1) $2,200 for every "completed year" of employment with respondent for a total of $8,800; (2) a termination bonus of $10,000; and (3) an allowance for expenses up to $3,000. In addition, according to petitioner's testimony, respondent was still paying petitioner's medical insurance until January of 2013 and petitioner was allowed to keep her 401K retirement account.

In a decision dated October 11, 2012, an administrative law judge ("ALJ") concluded that petitioner was disqualified from receiving unemployment benefits because she voluntarily left her employment without good cause involving fault on the part of respondent. The ALJ determined that petitioner failed in her burden of proving that (1) petitioner had a well-grounded fear of imminent layoff supported by definitive objective facts; and (2) petitioner would suffer a substantial loss by not accepting the EISP. *See* W.Va. Code § 21A-6-3(11); Syl. Pt. 5, *Childress v.*

*Muzzle*, 222 W.Va. 129, 131, 663 S.E.2d 583, 585 (2008).[3] The ALJ supported his determination by making the following relevant findings:

> 7.      [Respondent] supplied a document to [petitioner] that obtain[ed] frequently asked questions. This document advised each employee to talk with their local unemployment compensation office to determine their eligibility for benefits.
>
> *      *      *
>
> 10.     Although [petitioner] would have been allowed to be [laid] off since the Bell Atlantic/GTE merger [agreement] did not apply to her, [respondent] not having exercised its rights under Article 35 of the [CBA] would have kept [respondent] from laying [petitioner] off.
>
> 11.     . . . [Petitioner] did not lose her 401K [retirement account], her pension benefits[.]

Petitioner appealed to the Board of Review of Workforce West Virginia ("Board"), which, in an order dated December 6, 2012, adopted the ALJ's decision by reference "in its entirety." The Board also directed that any overpayment of benefits should be collected from petitioner pursuant to the Unemployment Compensation Law, West Virginia Code §§ 21A-10-21 to 29A-11-1.[4]

Petitioner sought review of the Board's final order from the Circuit Court of Kanawha County pursuant to the Administrative Procedures Act, West Virginia Code §§ 29A-1-1 to 29A-7-4. In an order entered April 3, 2014, the circuit court affirmed the Board's order, concluding, in pertinent part, as follows:

> 7.      . . . It is undisputed that there were no announced or implemented layoffs in connection with this EISP offer. The Court recognizes [p]etitioner's position that the work environment at the Clarksburg call center was stressful and hostile[5] and

---

[3] West Virginia Code § 21A-6-3(11), enacted in 2009, codified the two-part test set forth in Syllabus Point 5 of *Childress*, and provides, as follows:

> In the case of an individual who accepts an early retirement incentive package, unless he or she: (i) Establishes a well-grounded fear of imminent layoff supported by definitive objective facts involving fault on the part of the employer; and (ii) establishes that he or she would suffer a substantial loss by not accepting the early retirement incentive package.

[4] According to petitioner, she subsequently paid back an overpayment of $3,814.

[5] Petitioner's claim that a hostile work environment existed might stem from her allegation of a difficult relationship with Supervisor Mason who petitioner asserts attempted to persuade

that there were rumors and news stories circulating that caused her to fear that she would be laid off in the future. Nevertheless, this information and [p]etitioner's subjective feelings do not qualify as definitive objective facts involving fault on the part of the employer. Therefore, the ALJ and the [Board] did not err in relying on the written objective contractual terms governing this voluntary EISP offer.

8.      Furthermore, if [p]etitioner had decided not to volunteer for the EISP package offered by [respondent], she could have remained employed with [respondent] under the same terms and conditions of employment as her co-workers who did not accept the voluntary EISP offer. Therefore, [p]etitioner was unable to establish that she would have suffered a substantial loss by not accepting the incentive package under the second prong of [West Virginia] § 21A-6-3(11)(ii) and syllabus point 5 of *Childress*.

Petitioner now appeals the circuit court's April 3, 2014, order affirming the Board's decision that petitioner was disqualified from receiving unemployment benefits. We recognize the following standard of review in unemployment benefit cases:

"The findings of fact of the [Board] are entitled to substantial deference unless a reviewing court believes the findings are clearly wrong. If the question on review is one purely of law, no deference is given and the standard of judicial review by the court is *de novo*." Syllabus Point 3, *Adkins v. Gatson,* 192 W.Va. 561, [563,] 453 S.E.2d 395[, 397] (1994).

Syl. Pt. 1, *Childress*, 222 W.Va. at 130, 663 S.E.2d at 584.

On appeal, petitioner advances four arguments as to how she met her burden of showing that pursuant to West Virginia Code § 21A-6-3(11) and syllabus point 5 of *Childress*, (1) petitioner had a well-grounded fear of imminent layoff supported by definitive objective facts; and (2) petitioner would suffer a substantial loss by not accepting the EISP. We address these arguments *seriatim.*

First, petitioner contends that the ALJ erred in determining that the Bell Atlantic-GTE merger agreement would have prevented petitioner from being laid off. Respondent counters that an erroneous statement in the "discussion" portion of the ALJ's decision that the merger agreement applied to petitioner constituted an oversight that did not affect the correctness of the decision. We agree with respondent, finding that the ALJ's error was harmless because of the ALJ's separate findings that properly reflected that the merger agreement did not apply to petitioner and the ALJ's independent and correct determination that respondent could not lay petitioner off because respondent did not invoke Article 35 of the CBA.

Second, petitioner asserts that she understood the question-and-answer portion of the EISP packet to mean that respondent would not oppose her application for unemployment benefits.

employees to agree to the June of 2012 EISP.

Respondent counters—and petitioner's testimony supports—that all the question-and-answer page stated was that if petitioner ceased her employment in exchange for an EISP, "[her] eligibility for [unemployment] benefits are determined by state laws and state agencies" and "[she] should talk to your local unemployment office[.]" We agree with respondent that its statement neither guaranteed that petitioner would receive benefits, nor suggested that respondent would forego opposing her application.

Third, petitioner avers that respondent did not oppose unemployment benefits being granted to a group of former employees who took an EISP in April of 2012. Respondent counters that the ALJ properly sustained its objection to petitioner eliciting testimony in support of this allegation on the ground that the prior case had "nothing to do with this hearing." We review this evidentiary ruling only for an abuse of discretion. *See Skaggs v. Elk Run Coal Co., Inc.*, 198 W.Va. 51, 63, 479 S.E.2d 561, 573 (1996). We note that each case must be decided on its own facts and Mr. Stribling testified that respondent believed it had valid reasons for opposing petitioner's application for benefits. Therefore, we cannot say that the ALJ abused its discretion in finding that testimony about the earlier case would not have been relevant.

Fourth, petitioner contends that Ms. Mason, respondent's sales supervisor, attempted to persuade employees to agree to the June of 2012 EISP. Respondent counters that Ms. Mason testified that all she did was read a briefing document to employees verbatim. We note that petitioner was able to question Ms. Mason about the document's wording and that respondent admitted it into evidence. "[An] ALJ's credibility determinations are binding unless patently without basis in the record." *Martin v. Randolph County Bd. of Educ.*, 195 W.Va. 297, 304, 465 S.E.2d 399, 406 (1996) (Internal quotations and citations omitted.); *see also State v. Guthrie*, 194 W.Va. 657, 669 n. 9, 461 S.E.2d 163, 175 n. 9 (1995). ("An appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact."). After a review of Ms. Mason's testimony and the briefing document, we defer to the ALJ's decision to credit the testimony and reject this assignment of error.

In conclusion, we note that if the finder of fact's determination is plausible when reviewing the evidence in its entirety, "[an] appellate court may not reverse even if it would have weighed the evidence differently." *Martin*, 195 W.Va. at 306, 453 S.E.2d at 408 (Internal quotations and citations omitted.). We reject petitioner's arguments and find that they do not undermine the ALJ's determination that petitioner failed to meet the applicable two-part test under West Virginia Code § 21A-6-3(11) and syllabus point 5 of *Childress*. We further determine that the ALJ's ruling in this matter is consistent with the purpose of the unemployment compensation fund. In *Childress*, we explained that the fund constitutes an insurance program—not an entitlement program—the purpose of which "is advanced both when benefits are denied to those for whom the Act is not intended to benefit, as well as when benefits are awarded in proper cases." 222 W.Va. at 133, 663 S.E.2d at 587. Therefore, we conclude that the Board did not clearly err in adopting and incorporating by reference the ALJ's decision that petitioner was disqualified from receiving unemployment benefits because petitioner voluntarily left her employment without good cause involving fault on the part of respondent.

For the foregoing reasons, we find no error in the decision of the Circuit Court of Kanawha County and affirm its April 3, 2014, order affirming the Board's final order.

Affirmed.

**ISSUED:** May 1, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II